UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

G. WESLEY BLANKENSHIP,            Case No. 13-12386

           Plaintiff,            Denise Page Hood
v.            United States District Judge

SUPERIOR CONTROLS, INC., *et al*,            Michael Hluchaniuk
           United States Magistrate Judge
           Defendants.
_____/

**REPORT AND RECOMMENDATION
MOTION TO COMPEL ARBITRATION (Dkt. 48)**

**I.      PROCEDURAL HISTORY**

Plaintiff filed a motion to compel arbitration of certain counts of SCI's counter-complaint on January 3, 2014. (Dkt. 48). This matter was referred to the undersigned on January 15, 2014 for hearing and determination. (Dkt. 57).[1] Defendants filed a response on January 21, 2014. (Dkt. 59). Plaintiff filed a reply on February 3, 2014. (Dkt. 64). Plaintiff filed his own statement of resolved and unresolved issues on February 20, 2014. (Dkt. 77). After directing the parties to file a joint statement, as initially ordered, the joint statement was then filed on

---

[1] There is some disagreement about whether a motion to compel arbitration is a dispositive motion requiring a magistrate judge to issue a report and recommendation, rather than an order. In an abundance of caution, the undersigned has issued a report and recommendation, rather than an order. *See e.g.*, *Milan Express Co. v. Applied Underwriters Captive Risk Assur. Co.*, 2014 WL 279698 (W.D. Tenn. 2014).

February 21, 2014. (Dkt. 78). Pursuant to notice, the Court held a hearing on February 26, 2014. (Dkt. 61). After hearing the parties' arguments, the matter was taken under advisement.

This matter is now ready for report and recommendation. For the reasons set forth below, the Court **RECOMMENDS** plaintiff's motion to compel arbitration be **DENIED**.

## II.   PARTIES' ARGUMENTS

### A.   Plaintiff's Argument

SCI filed a counter-complaint alleging four counts that relate directly to the Employment, Noncompetition and Confidentiality Agreement (the Employment Agreement) between plaintiff and SCI, which contains an arbitration provision. These claims are: Count IV - Tortious Interference with an Existing Business Contract and with Business Expectancies; Count V - Breach of Fiduciary Duty; Count VI - Injunctive Relief and Damages in Connection with Breach of Employment, Noncompetition and Confidentiality Agreement; and Count VII - Rescission of Fee Agreement and First Amendment to Employment, Noncompetition and Confidentiality Agreement. With respect to SCI's tortious interference claim and breach of fiduciary duty claim, SCI relies on allegations that plaintiff induced a former SCI employee to resign from SCI and that the two conspired to divert business away from SCI, which plaintiff contends directly

implicates an alleged breach of § 7 of the Employment Agreement. According to plaintiff, SCI's claims relating to breach of the Employment Agreement and Rescission of the Fee Agreement and First Amendment to Employment, Noncompetition and Confidentiality Agreement are more obviously subject to the broad arbitration provision. Plaintiff contends that the arbitration provision encompasses "any dispute" relating to the breach or termination of the Employment Agreement and any dispute related to plaintiff's status as an employee of SCI. At a minimum, plaintiff asserts that these claims are related to his status as an employee. Thus, based on the federal policy favoring arbitration and the presumption of arbitrability, plaintiff argues that SCI should be compelled to arbitration Counts IV-VII of its Counterclaim.

    B.    <u>Defendants' Argument</u>

According to SCI, Counts IV, V, VI and VII are not subject to arbitration. SCI contends that claims related to the breaches of confidentiality and noncompetition provisions are expressly excluded from the arbitration clause in the Employment Agreement. The arbitration clause in § 9 of the Employment Agreement excludes from arbitration "breaches of the Agreement by the employee as described in § 8 of the Agreement." The breaches "described" in § 8 of the Employment Agreement are breaches of the "covenants and restrictions" of the Employment Agreement. The covenants and restrictions in the Employment

Agreement are the noncompetition provisions contained in § 7.

According to SCI, not only the language of the Employment Agreement, but plaintiff's own course of performance establishes that the intent of the parties was to exclude breaches of the noncompetition covenants and restrictions from the arbitration clause. Plaintiff, in the complaint which initiated this lawsuit, specifically requested this Court to declare the covenants and restrictions in § 7 of the Employment Agreement to be unenforceable. In other words, plaintiff sought to bring its claim related to § 7 before a court rather than seeking to initiate arbitration regarding that claim. According to SCI, plaintiff cannot now seriously maintain that the parties actually intended that disputes related to the covenants and restrictions in § 7 be subject to arbitration. Additionally, SCI contends that plaintiff has clearly waived any right to seek to compel arbitration of the claims asserted in the counter-complaint. By initiating litigation in connection with the covenants and restrictions in § 7 of the Employment Agreement, by failing to raise an arbitration agreement as an affirmative defense to the counter-complaint, and by engaging in litigation and discovery in connection with those claims, SCI asserts that plaintiff has waived any right to arbitration.

## III. ANALYSIS AND CONCLUSION

The arbitration provision in the Employment, Noncompetition and Confidentiality Agreement provides as follows:

> 9. <u>Arbitration</u>. Any dispute relating to the breach or termination of this Agreement other than a breach by Employee as described in section 8 above, or in any other way related to the Employee's status as an Employee, shall be resolved in binding arbitration. The current Employment Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association (AAA") shall apply, and any award made pursuant to arbitration shall be final and may be entered in a court of competent jurisdiction.

Section 8 of the Employment Agreement provides as follows:

> 8. <u>Injunctive Relief</u>. Employee understands that the Corporation would not have an adequate remedy at law for the breach or threatened breach by Employee of the covenants and restrictions set forth above, and agrees that if there is any such breach or threatened breach the Corporation may, in addition to other legal or equitable remedies which may be available to it, obtain an injunction or restraining order to enjoin or restrain Employee from the breach of threatened breach of such covenants.

Before compelling arbitration, a court must determine whether a dispute is arbitrable, "meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Nestle Waters North America v. Bollman*, 505 F.3d 498, 502 (6th Cir. 2007) (citation omitted). Just as in *Nestle*, the parties do not appear to dispute the validity of the arbitration clause or the application of the Federal Arbitration Act. Rather, they dispute whether the counter-claims fall within the scope of the arbitration provision and if they do, whether plaintiff has waived his right to

compel arbitration of those claims.

The *Nestle* court first noted that arbitration language in a contract should be examined in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration. *Id*. at 503. The court also noted that the policy in favor arbitration is not absolute and this policy is a matter of "consent" not "coercion." *Id.* at 504. Keeping these countervailing principles in mind, the Sixth Circuit has held that in deciding whether an issue is within the scope of an arbitration agreement courts should "ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Id*., quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). The court has applied this method to determine whether particular torts or challenges to the validity of the contract itself are within an arbitration clause. *Fazio*, 340 F.3d at 395-96 (holding that alleged theft of funds is within arbitration clause); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 576-77 (6th Cir. 2003) (holding that alleged fraudulent inducement claim is within arbitration clause). SCI does not even attempt to satisfy this test as to the counterclaims at issue, which all involve breach of the employment agreement. Thus, these claims fall squarely within the scope of the arbitration clause.

SCI's claimed "carve out" is not persuasive. Many arbitration agreements

provide that the parties can seek injunctive relief from a court before proceeding to arbitration in order to preserve the *status quo*. For example, in *Board of Trustees of the MetroHealth System v. EraMED*, 2010 WL 3239011 (N.D. Ohio 2010), the court examined the following arbitration clause:

> With the exception of any actions for temporary or permanent injunctive relief, any dispute under or in connection with this Agreement shall be submitted for arbitration in Cleveland, Ohio, pursuant to the rules of the American Arbitration Association for commercial arbitrations, before a single arbitrator selected in accordance with the rules of the American Arbitration Association. Costs of the arbitration, including arbitrator's fees, but excluding each party's own costs, including their own attorneys' fees, shall be borne equally by EraMED and MetroHealth.

*Id*. at *4. The court concluded that the arbitration clause applied to all but the most narrow controversy related to MetroHealth's contractual arrangements with EraMED. Specifically, the court found that the arbitration clause only excluded requests for TROs or permanent injunctions, which were not at issue in the dispute before the court, which was for declaratory judgment, specific performance and breach of contract. *Id*. at 4. Rather, the language of the clause "indicates that the parties' basic intent was to provide a single arbitral forum to resolve all disputes" arising under the parties' agreement. *Id.*, citing *Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1282 (6th Cir. 1990). The *MetroHealth* court also noted that unless a matter is expressly exempted, it should

be construed as being within the scope of the arbitration agreement. *Id.*, citing *United Steelworkers of America v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994). Here, the only exception to the arbitration provision in the Employment Agreement is for seeking injunctive relief. To conclude otherwise and to accept SCI's argument would essentially gut the arbitration provision because all breaches of the "covenants and restrictions" in the agreement would be excluded. Nothing would appear to be left to arbitrate, except SCI's obligations to plaintiff. Such an intent does not appear evident from the contract. Rather, reading the two provisions together, it seems clear the parties only intended to exclude claims for preliminary injunctive relief from arbitration.[2]

The next question is whether plaintiff's actions in bringing this lawsuit and pursuing litigation on the counterclaims since July 2013 have operated as a waiver of the arbitration provision. As the Sixth Circuit recently explained in *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012), although it has long been settled that a party can waive its contractual right to arbitration, *see Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th

---

[2] Count VI seeks injunctive relief and damages, but does not seem to seek immediate injunctive relief that would require court intervention, which presumably would have to be done by motion. Such permanent injunctive relief can be sought in arbitration. *See Nexteer Automotive Corp. v. Korea Delphi Automotive Systems Corp.*, 2014 WL 562264, *14 (E.D. Mich. 2014) (Noting the difference between seeking preliminary injunctive relief in court only when necessary to ensure that the arbitration process is not rendered meaningless and usurping the arbitrator's authority to render permanent injunctive relief).

Cir.1950), "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). The Court explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Johnson*, 680 F.3d at 717, citing *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010), quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003); *see Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002).

In this case, there are two major facts weighing favor of waiver. The first is the plaintiff's delay in seeking to have the counterclaims remanded to arbitration. Plaintiff waited six months from the time the counter-complaint was filed before seeking to compel arbitration. The second is found in plaintiff's complaint itself. Plaintiff correctly points out that he does not directly bring any claims under the Employment Agreement, in that there is no "count" for breach of the Employment Agreement. However, plaintiff does, in fact, seek declaratory relief under that very agreement. Specifically, based on SCI's "actual and anticipatory breach of the Shareholder Agreement, Plaintiff asks this Court for a declaratory ruling that Plaintiff is not bound by his non-compete obligations as of June 5, 2013 or at any

other time." (Dkt. 1, Pg ID 26, ¶ 1). In addition, plaintiff asks this Court for declaratory rulings that the "non-compete agreement" violates Michigan law and is unenforceable, does not protect a legitimate business interest, is over-broad, violates Michigan public policy, and is otherwise without force or effect. (Dkt. 1, Pg ID 26, ¶ 127). While plaintiff does not identify the "Employment Agreement" as such, that is the agreement in which his non-compete obligations are found. Such declaratory claims stemming from a contract with an arbitration provision are routinely found to fall within the scope of the arbitration clause. *See e.g.*, *Cycle & Marine Land, Inc. v. Polaris Sales, Inc.*, 614 F.Supp.2d 782, 785-786 (E.D. Mich. 2007) (Declaratory action regarding interpretation of Michigan state fell within the scope of the contractual arbitration provision); *MetroHealth*, at * 4 (Plaintiff's declaratory judgment claim that the statutory liens filed by the defendant are invalid fell within the scope of the arbitration agreement); *Detroit Edison Co. v. Burlington Northern and Santa Fe Railway Co.*, 442 F.Supp.2d 387 (E.D. Mich. 2006) (Both the declaratory judgment and breach of contract claims concern the interpretation of the terms of the agreement and the rights or obligations of the parties.).

Plaintiff claims, however, that SCI has always been "on notice" of plaintiff's position that its counterclaims were subject to the arbitration provision because plaintiff pointed that out in his complaint. (Dkt. 1, Pg ID 16, ¶ 83)

("Moreover, those claims, which are arbitrable and are not offsets but rather independent claims, have nothing to do with what the Company owes Plaintiff."). Plaintiff's position is not supported by the case law. In *Johnson Associates*, the Court looked to *Manasher v. NECC Telecom*, 310 Fed.Appx. 804 (6th Cir. 2009), in which it had held that the defendant "waived whatever right to arbitrate it may have had by failing to plead arbitration as an affirmative defense and by actively participating in litigation for almost a year without asserting that it had a right to arbitration" because that "conduct was 'completely inconsistent with [any] reliance [on the right to arbitration]' and caused the plaintiffs to suffer prejudice through unnecessary delay and expense." *Id*. at 806 (quoting *Gen. Star Nat'l Ins*., 289 F.3d at 438). In *Johnson*, on the parties contended that the Sixth Circuit's determination in *Manasher* that a defendant's failure to raise an arbitration clause in its answer is inconsistent with its reliance on the right to arbitrate is suspect because a defendant is not required by Federal Rule of Civil Procedure 8(c) to plead arbitration as an affirmative defense. The court concluded that, regardless of whether a defendant is required to raise arbitration as a defense under Rule 8(c), a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate:

> The filing of an answer is, after all, the main opportunity
> for a defendant to give notice of potentially dispositive
> issues to the plaintiff; and the intent to invoke an

> arbitration provision is just such an issue. Indeed, as a practical matter, an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit. It is therefore unsurprising that defendants routinely raise the right to arbitration in their answer, whether it is technically required by Rule 8 or not.

*Johnson Associates*, 680 F.3d at 718, citing *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir.1985) ("Although [defendant] did not move for a stay pending arbitration until approximately eight months into the litigation, in its answer to the original complaint, [defendant] did seek to have the action dismissed because the dispute was covered by a valid and enforceable arbitration clause thereby putting [plaintiff] on notice as to its desire to arbitrate the matter."); *Hilti, Inc. v. Oldach,* 392 F.2d 368, 371 (1st Cir. 1968) (noting that "defendant's answer, in its special defense, served notice on plaintiff of the arbitration defense"); *see also Gen. Guar. Ins. Co. v. New Orleans Gen. Agency*, *Inc.*, 427 F.2d 924, 929 n. 5 (5th Cir. 1970) ("Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver."). The Court concluded that the defendant's actions were completely inconsistent with any reliance on its right to arbitrate because the defendant had: failed to raise arbitration in its answer, *see Manasher*, 310 Fed.Appx. at 806; asserted a counterclaim for breach of contract, *see e.g.*, *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 310 Fed.Appx. 858, 859 (6th Cir. 2009) (noting that the

defendant "participated in litigation when it filed an answer and counterclaims"); and actively scheduled and requested discovery, including depositions, rather than moving to compel arbitration following the end of formal settlement discussions, *cf. Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (noting that the defendant "promptly moved" for arbitration following failure of settlement).

In this case, plaintiff affirmatively requested declaratory relief regarding his obligations under the Employment Agreement and while he "noted" in his complaint that SCI's anticipated counterclaims were subject to arbitration, he did not plead arbitration as an affirmative defense in his answer to the counter-complaint, which was filed on August 14, 2013. (Dkt. 29). In addition, plaintiff waited six months from the time of the filing of the counterclaims to bring the motion to compel arbitration. Under these circumstances, plaintiff's behavior is entirely inconsistent with his right to arbitration and has evidenced a waiver of the agreement to arbitrate.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion to compel arbitration be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 25, 2014                     s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

 I certify that on April 25, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Robert P. Zora, Daniel D. Quick, Mark McGowan, Michael J. Barton, Megan Piper McKnight.

         s/Tammy Hallwood
         Case Manager
         (810) 341-7887
         tammy_hallwood@mied.uscourts.gov